UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

J.G., a minor, by and through his parents,
J.E.G. and N.G.,
and J.G. and N.G., individually,

    Plaintiffs,

                                COMPLAINT
       VS                       JURY TRIAL DEMANDED

SYCAMORE COMMUNITY SCHOOL      CIVIL FILE NO:
DISTRICT BOARD OF EDUCATION

    Defendant.

---

## I.   INTRODUCTION

1. This is an action for declaratory, injunctive, and monetary relief to redress the unlawful discrimination and retaliation committed by Defendant Sycamore Community School District ("Sycamore" or "the District") against J.G.[1], a student with disabilities, and his parents J.E.G. and N.G. (collectively, "Plaintiffs"), in violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.

2. Defendant has failed to provide J.G. with equal access to communication and education by refusing to assign or train a qualified communication partner capable of supporting his expressive and receptive communication needs. This failure has excluded J.G. from participation in, and denied him the benefits of, the District's educational programs and

---

[1] To preserve the anonymity of the minor child and parents, and the confidentiality of their personal information, in conformity with Rule 5.2(a) of the Federal Rules of Civil Procedure, the privacy provisions of the IDEA, 20 U.S.C § 1417(c), and the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, the Complaint identifies the student as J.G. and parents as J.G. and N.G.

activities.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 (conferring jurisdiction over civil actions arising under laws of the United States) because this is a civil action seeking redress for the deprivation of rights secured by federal law, specifically, Section 504 of the Rehabilitation Act of 1973, 42 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act as Amended (2009), 42 U.S.C. § 12132 *et seq.*

4. This Court is the appropriate venue under 28 U.S.C. § 1391(b) in that all the parties reside in this Judicial District, the defendant is subject to personal jurisdiction in this District, and the events giving rise to this Complaint occurred in this District.

## III. PARTIES

6. Plaintiff J.G. is a minor child residing in Hamilton County, Ohio and the City of Cincinnati and is a citizen of the United States.

7. Plaintiff J.G. is an individual with autism, anxiety, and dyspraxia, each of which substantially limit the major life activities including learning, communicating, reading, writing, concentrating, thinking, and interacting with others. J.G. is a qualified individual with a disability who is eligible for protections under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq.

8. Plaintiffs J.E.G. and N.G. are the natural and legal guardians of J.G. and reside in Hamilton County, Ohio and the City of Cincinnati and are citizens of the United States.

9. Defendant, Sycamore Community School District, is a local public school district organized under the laws of Ohio. It is a local education authority, and it is responsible for avoiding discrimination on the basis of disability, for providing related aids and services to students with disabilities, for complying with Ohio law, and for resisting retaliation against persons who make good faith complaints of discrimination/retaliation/failure to accommodate.

10. The District is bound by the Americans with Disabilities Act, and its amendments, as well as section 504 of the Rehabilitation Act. A School District is a public educational system that receives federal financial assistance from the United States of America. The District is a covered "public entity" under the ADA; Title II's definition of "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. 12131(1)(B). Similarly, the District is covered by the Rehab Act because it receives federal financial assistance and constitutes a "local educational agency" within the meaning of § 504.29 U.S.C. § 794(b)(2)(B).

### IV.  LEGAL AND FACTUAL BASIS FOR THIS LAWSUIT

11. Plaintiffs incorporate the preceding paragraphs.

12. Plaintiff J.G. has been a student residing within the geographical boundaries of the Sycamore Community School District since 2014.

13. Plaintiff J.G. is a student with a disability who is eligible for protections under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq. J.G. has been diagnosed with autism, which substantially limits his major life activities, including learning, communicating, reading, writing, concentrating, thinking, and interacting with others.

14. J.G.'s disability significantly affects his expressive and receptive communication. He communicates primarily through a method known as letterboarding, which requires the assistance of a trained communication partner to accurately interpret and facilitate his communication. Letterboarding is the primary and most reliable means by which J.G. expresses academic ideas, social preferences, and responses to questions.

15. Because J.G.'s ability to communicate effectively depends on the skill and consistency of his communication partner, the provision of an appropriately trained communication partner is an auxiliary aid and service necessary to ensure effective communication within the meaning of 28 C.F.R. § 35.160.

16. Defendant Sycamore Community School District has recognized that J.G. requires a communication partner and has agreed that staff working with him must receive training in the letterboarding method.

17. However, there is an ongoing disagreement between the parties regarding the amount and quality of training required to ensure that communication is effective.

18. In Spring 2024, the parties agreed to implement a training schedule for the 2024–2025 school year to improve the proficiency of staff supporting J.G. This plan was intended to increase consistency and accuracy among staff acting as J.G.'s communication partners.

19. The agreed-upon training was implemented during the 2024–2025 school year but was unsuccessful. Staff remained inconsistent in their use of letterboarding, and J.G.'s ability to express himself and access instruction was significantly impaired as a result.

20. Following these issues, J.G.'s parents repeatedly requested additional and more intensive training for staff to ensure that communication with J.G. would be as effective as communication with nondisabled students.

21. Despite these repeated requests, the District has refused to provide any training beyond what it proposed in Spring 2024, thereby denying J.G. the auxiliary aids and services necessary for effective communication and equal participation in his educational program.

22. As a result of the District's failure to provide adequately trained staff and sufficient communication support, J.G. has been denied meaningful access to classroom instruction, peer interaction, and participation in the educational programs and activities of the District, in violation of Section 504 and Title II of the ADA.

23. Plaintiff J.G. has suffered direct injury as a result of Defendant's actions of its refusal to reasonably accommodate J.G. so that he can access Defendant's programs and activities. Because of the District's failure to provide a consistently trained communication partner, J.G. was unable to participate meaningfully in classroom discussions, complete assignments requiring verbal interaction, or demonstrate his knowledge, resulting in regression and emotional distress.

24. Defendants' refusal to accommodate J.G.'s disabilities has caused him harm, including, but not limited to:

    a. denial of equal access to Defendants' facilities, programs, and services;

    b. denial of the opportunity to interact with other students at High School during the 2024-2025 and 2025-2026 school years;

    c. loss of ability to interact with students at High School and stress caused by having to attend school in a different setting and in a different format for portions of the 2024-2025 and 2025-2026 school years; and

    d. emotional distress and pain, embarrassment, mental anguish, inconvenience, and

loss of enjoyment of life resulting from Defendants' refusal to reasonably accommodate him as a person with a disability.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES NOT REQUIRED

25. Plaintiffs are not required to exhaust administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(f), before pursuing this action. The claims asserted here arise under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act and concern disability-based discrimination and denial of effective communication, not the adequacy of J.G.'s special-education programming or any alleged denial of a free appropriate public education.

26. The gravamen of this complaint is that the District refused to provide the auxiliary aids and services necessary to ensure effective communication, specifically, an appropriately trained communication partner for J.G. as required by 28 C.F.R. § 35.160, not that it failed to provide an educational benefit under the IDEA.

27. The Supreme Court has made clear that exhaustion is required only when a plaintiff seeks relief for the denial of a FAPE, that is, relief "also available" under the IDEA. *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154 (2017); *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142 (2023). Here, Plaintiffs seek compensatory damages and injunctive relief for discrimination and exclusion from equal participation, remedies not available under the IDEA.

28. The Third Circuit recently reaffirmed this distinction in *Le Pape v. Lower Merion Sch. Dist.*, 91 F.4th ___ (3d Cir. 2024), which involved a non-speaking autistic student whose school district refused to provide staff trained in letterboarding. The Court held that the IDEA's FAPE standard and the ADA/Section 504 "effective communication" requirement

6

impose different obligations, emphasizing that "a school may still be in violation of [the ADA or Section 504] even when a child is able to make educational progress sufficient for a FAPE under the IDEA." (*Id.* at 26). The ADA's duty to furnish auxiliary aids and to "give primary consideration to the requests of individuals with disabilities," 28 C.F.R. § 35.160(b)(2), stands independent of the IDEA's educational-benefit standard.

29. Consistent with *Le Pape*, Plaintiffs' claims seek to vindicate J.G.'s right to equal access and effective communication, not to obtain or modify an IEP or secure compensatory education. The alleged harm is the District's failure to provide trained staff and meaningful communication access, resulting in exclusion from participation—not the loss of "educational benefit."

30. Even if exhaustion were arguendo applicable, it would be futile because (a) an IDEA hearing officer lacks jurisdiction to award compensatory damages or systemic injunctive relief under the ADA/Section 504; (b) the conduct alleged constitutes intentional discrimination and retaliation beyond the IDEA's remedial scope; and (c) further administrative delay would cause continuing irreparable harm by denying J.G. effective communication in daily instruction.

31. Accordingly, Plaintiffs properly bring these claims directly under Title II of the ADA and Section 504 without pursuing IDEA administrative procedures.

**CLAIMS FOR RELIEF**

**COUNT I: DISCRIMINATION UNDER § 504 OF
THE REHABILITATION ACT OF 1973 (29 U.S.C. § 794 et seq.)**

32. Plaintiffs incorporate the preceding paragraphs.

33. Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing regulations, prohibits discrimination in any program or activity by recipients of federal

7

funding against otherwise qualified individuals on the basis of their disabilities. 29 U.S.C. § 794, 34 C.F.R. § 104.

34. A "program or activity" includes local education agencies, public boards of education, and school systems. 29 U.S.C. § 794(b)(2)(B), referencing 20 U.S.C. § 7801(26). A "recipient of federal financial assistance" is a public or private agency or other entity to which Federal financial assistance is extended directly or through another recipient. 34 C.F.R. § 104.3(f).

35. Among other requirements, entities subject to Section 504 must provide equal opportunity to qualified persons with disabilities to participate or benefit from any aid, benefit, or service they make available. 34 C.F.R. § 104.4(b)(l)(ii).

36. Entities subject to Section 504 must avoid otherwise limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service. 34 C.F.R. § 104.4(b)(l)(vii).

37. Section 504 also prohibits Defendant from segregating individuals with disabilities, and requires Defendant to ensure that people with disabilities receive services in the most integrated setting.

38. Defendant is a recipient of federal financial assistance from the Department of Education as defined by 34 C.F.R. § 104.3(f), (h) and operates programs and activities as defined by 34 C.F.R. § 104.3(k) such that it is an entity that must adhere to the requirements of Section 504.

39. An "individual with a disability" is defined by reference to the Americans with Disabilities Act ("ADA"). 29 U.S.C. § 705(20)(B); referencing 42 U.S.C. § 12102(1). A person has a disability under Section 504 if they have a physical or mental impairment

8

that substantially limits one or more of their major life activities. 42 U.S.C. § 12102(1), 34 C.F.R. § 104.3(j)(1).

40. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. § 12102(2)(A), 34 C.F.R. § 104.3(j)(2). Major life activities also include the operations of major bodily function. 42 U.S.C. § 12102(2)(B), 34 C.F.R. § 104.3(j)(2).

41. A "qualified individual with a disability" is one who, with or without reasonable accommodations for their disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of a recipient of Federal financial assistance. See 29 U.S.C. § 794(a).

42. J.G. is an individual having physical and mental impairments, including but not limited to, Autism and Dyspraxia. J.G. is a qualified individual with a disability within the meaning of Section 504.

43. J.G. is entitled and qualified to participate in the educational program provided at his neighborhood school.

44. Defendant denied J.G. the benefits of its educational programs and services and subjected him to discrimination by reason of his disability by failing to provide the auxiliary aids and services necessary to ensure effective communication and equal educational opportunity.

45. The District's refusal to provide adequate and ongoing training for staff serving as J.G.'s communication partners constitutes deliberate indifference to J.G.'s federally protected rights under Section 504.

46. Defendant acted with deliberate indifference by knowing that its failure to train staff

would likely result in denial of effective communication yet failing to act upon repeated parental notice.

47. As a direct and proximate result of Defendant's actions and omissions, J.G. has suffered loss of educational benefit, emotional distress, and other injuries entitling him to relief under 29 U.S.C. § 794(a).

**COUNT II: THE AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12131)**

48. Plaintiffs incorporate the preceding paragraphs.

49. The ADA contains four substantive Titles that address discrimination in the areas of employment, public services, public accommodations and commercial facilities, and telecommunications. Plaintiff brings this complaint under Title II of the ADA, which governs public services and protects individuals from discrimination on the basis of disability by public entities.

50. A public entity is defined to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1).

51. Title II of the ADA and its implementing regulations forbid public entities, including local educational agencies, to exclude or deny people with disabilities the benefits of its services, programs, or activities, or to discriminate based on disability. 42 U.S.C. § 12132; 28 C.F.R. §§ 35.104 & .130(a).

52. It further prohibits discrimination against individuals with disabilities and extends the non-discrimination rule of § 504 of the Rehabilitation Act to services provided by any public entity. See 42 U.S.C. § 12132. The law governing Title II is found at 42 U.S.C. § 12101 et seq. and is codified at 28 C.F.R. § 35.101 et seq.

53. Pursuant to the ADA, the Defendant cannot discriminate against J.G. or other persons

10

with disabilities based solely on their disabilities. 42 U.S.C. § 12132 (a), 28 C.F.R. § 35.130(a).

54. The Defendant also cannot discriminate against Plaintiffs J.E.G. and N.G. because of their association with a person with a disability. 28 C.F.R. § 35.130(g).

55. The ADA provides,

    a. That the Defendant is prohibited from denying "a qualified individual with a disability the opportunity to participate in services, programs, or activities that are not separate or different, despite the existence of permissibly separate or different programs or activities." 28 C.F.R. § 35.130(b)(2).

    b. That the Defendant is required to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

    c. That the Defendant "shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.150(b)(7)i1).

45. Further, the ADA specifies that "nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit provided under the ADA or this part which such individual chooses not to accept" 28 C.F.R. § 35.150(e)(1).

46. Prohibited disability "based discrimination by public entities includes the failure to provide qualified individuals with disabilities an equal opportunity to participate in or

benefit from aids, benefits, or services or "otherwise limit" a qualified individual with a disability in the enjoyment of any right, privilege, aid, benefit, or service. 28 C.F.R. § 35.130(b)(l)(ii) & (vii). Prohibited discrimination additionally includes the failure to make reasonable modifications as necessary to avoid discrimination against an individual based on their disability. 28 C.F.R. § 35.130(b)(7).

47. An "individual with a disability" is one who has a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. § 12102(1), 28 C.F.R. § 35.108(a)(1).

48. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. §12102(2)(A), 28 C.F.R. § 35.108(c). Major life activities also include the operations of major bodily functions. 42 U.S.C. § 12102(2)(B), 28 C.F.R. § 35.108(c)

49. A "qualified individual with a disability" is one who, with or without reasonable accommodations for her disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of the public entity. 42 U.S.C. § 12131(2).

50. J.G. is an individual having physical and mental impairments, including but not limited to, Autism and Dyspraxia. J.G. is a qualified individual with a disability within the meaning of the ADA. J.G. is an otherwise qualified individual with disabilities who meets the essential eligibility requirements to receive services from or participate in the programs or activities of the Defendant. See 42 U.S.C. § 12131(2).

51. Under 28 C.F.R. § 35.160(a)(1), public entities must take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications

12

with others.

52. Under 28 C.F.R. § 35.160(b)(1), where necessary to afford an individual with a disability an equal opportunity to participate in and enjoy the benefits of a public entity's services, programs, or activities, the public entity must furnish appropriate auxiliary aids and services.

53. J.G. requires an appropriately trained communication partner as an auxiliary aid and service to ensure effective communication in the school setting.

54. J.G. is regarded as having an impairment by Defendant.

55. The District knew of J.G.'s need for this auxiliary aid and acknowledged that staff training was necessary to fulfill its legal obligations under the ADA.

56. Nevertheless, the District refused to provide adequate training beyond a limited schedule established in Spring 2024, despite ongoing evidence that the training provided was ineffective and that J.G. continued to be unable to communicate effectively.

57. By failing to provide appropriately trained staff and refusing to modify its training plan to meet J.G.'s individualized needs, the District has denied J.G. effective communication, equal participation, and meaningful access to the District's educational programs and services.

58. Defendant acted with deliberate indifference by knowing that its failure to train staff would likely result in denial of effective communication yet failing to act upon repeated parental notice.

59. Defendant's conduct constitutes discrimination on the basis of disability in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and 28 C.F.R. § 35.160.

60. Defendant's acts and omissions constitute a violation of Plaintiffs' rights under the ADA.

61. As a proximate cause of these violations of Title II of the Americans with Disabilities Act, Plaintiffs have suffered harm as set forth above.

## COUNT III – Parental Discrimination Based on Association (ADA and Section 504)

62. Plaintiffs incorporate all preceding paragraphs.

63. Plaintiffs J.E.G. and N.G., the parents of J.G., are "qualified individuals" under the ADA and Section 504 and are entitled to the protections of those statutes.

64. Defendant's conduct also violates 34 C.F.R. § 104.39, which protects individuals from discrimination because of their association with a person with a disability.

65. Defendant discriminated against J.E.G. and N.G. because of their association with their disabled child, J.G., by refusing to provide the accommodations and services necessary for their child's effective communication and by excluding the parents from equal participation in his educational programming.

66. Defendant's actions caused emotional distress, humiliation, and the deprivation of their statutory rights to participate equally and effectively in their child's education.

## COUNT IV – Retaliation (ADA and Section 504)

67. Plaintiffs incorporate all preceding paragraphs.

68. J.E.G. and N.G. engaged in protected activity by advocating for their child's right to effective communication, requesting a trained communication partner, and filing complaints and correspondence asserting those rights.

69. In response, after engaging in protected activity, Defendant retaliated by, inter alia, refusing to schedule meetings at mutually agreeable times, disregarding parental concerns, delaying written responses, and threatening unilateral changes to J.G.'s

program.

70. There was a causal connection between Plaintiffs' protected activity and Defendant's adverse actions.

71. Defendant's retaliatory conduct would deter a reasonable parent from continuing to advocate for their child's rights and constitutes a violation of 42 U.S.C. § 12203 and 34 C.F.R. § 104.61.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs prays that this Court:

A. Issue a declaratory judgment that Defendant's actions violated the ADA, and the Rehabilitation Act.

B. Order Defendant to immediately provide J.G. with an appropriately trained communication partner;

C. Order Defendant to implement a training and supervision plan to ensure communication partners receive ongoing professional development;

D. Award compensatory damages, including emotional distress, pain and suffering, and the denial of equal participation in and access to Defendant's programs and activities.

E. Enjoin Defendant from further retaliation or interference with parental participation in J.G.'s education;

F. Award them damages in an amount to be determined at trial;

G. Award reasonable attorney's fees and costs under 42 U.S.C. § 12205, 29 U.S.C. § 794a(b), and 42 U.S.C. § 1988(b); and

H. Grant such other relief as this Court deems just and proper.

15

## DEMAND FOR A JURY TRIAL

**Plaintiff demands a jury trial on all issues properly triable by a jury.**

                Respectfully submitted,

                */s/ Michelle K. McGuire*
                Michelle K. McGuire (0076553)
                PO Box 81804
                Cleveland, Ohio 44181
                (440) 396-7844
                michelle@mcguirelawadvocacy.com
                Attorney for Plaintiffs